[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this cause of action the plaintiff seeks a dissolution of her marriage to the defendant, alimony, custody and support for her minor child, medical insurance for the minor child, a transfer of the defendant's interest in the family home and assignment of all or part of the estate of the defendant, insurance upon the life of the defendant designating the plaintiff as irrevocable beneficiary to secure future payments of alimony and counsel fees.
The matter was made returnable to November 12, 1996. The defendant appeared by counsel on that date. Both parties filed financial affidavits dated December 5, 1996 and entered into a stipulation for temporary orders which were approved by the court on that date.
The court ordered defendant to pay $131 per week child support; to maintain all insurance on his wife and the children as available through his place of employment; to be responsible for one-half of any unreimbursable medical and dental expense for the minor child. The plaintiff was granted exclusive use of the family home with the responsibility for payment of the mortgage, insurance, water and sewer use charges and utilities associated with this occupancy. Plaintiff was also granted exclusive use of a Thunderbird motor vehicle. Defendant was ordered to pay the installment loan on this car and to contribute $25 weekly towards the real estate mortgage obligations on the family dwelling. The court also placed a freeze order on the bank accounts of the parties, which were listed on the respective financial affidavits.
Both parties complied with the orders of the court up through the date of the court's hearing. Discovery, including depositions, was completed before the hearing date on October 2, 1997.
The party filed up-to-date financial affidavits on October 1. CT Page 11635 The plaintiff listed weekly expenses of $458.54 against total weekly income of $465.45. This income was derived from her permanent position as a cafeteria worker in the Wallingford school system where she earned a net of $198.17 and from her part-time work at K-Mart where she earned a net of $111.28. Added to this was the child support payments per order of the court of $131 weekly plus defendant's court ordered mortgage contribution of $25 per week.
Plaintiff listed on her financial affidavit the total value of her assets as $373,736.26 against liabilities of $300.60.
Defendant's financial affidavit showed weekly income of $715, and weekly expenses including a deduction for child support which reduced the net to $609.00. Defendant's expenses also included a payment of $65 ordered by the court in payment of the loan for the T-Bird automobile which was in use by the plaintiff, and a deduction of $25 per week as a contribution to the mortgage obligation of the parties. Defendant listed the total cash value of his assets at $103,400 against total liabilities of $800.
The discrepancy in assets shown on these financial affidavits is readily explainable. Defendant is receiving a disability pension as a Wallingford firefighter. This pension amounts to $771 weekly. Payment comes from two sources. The town contributes $238, and the worker's compensation fund contributes $533. When the worker's compensation award weekly benefit of $533 has been exhausted the town will pay the entire disability pension award of $771 for as long as the defendant lives.
Plaintiff's financial affidavit placed a value of $477,894.02 on the defendant's disability pension and claimed a one-half interest of $259,911.83. Plaintiff also placed a value of $30,516.39 on defendant's two worker's compensation claims, one of which is presently contested; the other is contributing $533 weekly toward defendant's weekly disability pension.
The parties submitted to the court two written appraisals from Pension Appraisers Incorporated. The first appraisal dated July 25, 1997 is entitled "present value of Thomas A. Catucci's defined pension benefit." This appraisal indicated Mr. Catucci was entitled to an annual benefit of $23,142.77, a monthly benefit of $1,928.56 as of July 29, 1997, and indicated a present value of this defined benefit pension as of July 29, 1997, in the amount of $277,845.36. This is the nondisability pension Mr. CT Page 11636 Catucci would have been entitled to if he had voluntarily retired on July 27, 1997, after 24.85 years of service. As a disabled male firefighter, Mr. Catucci's defined pension benefit was computed on a different basis. Pension Appraiser's letter of October 7, 1997 estimated the monthly benefit to be $3,336.67; the annual benefit to be $40,040.04; and the present value as of July 29, 1997, to be $467,627.62.
Pension benefits such as Mr. Catucci's are property within the meaning of the statute, § 46b-81, Krafick v. Krafick,234 Conn. 783 (1995), and must be considered by the court in a dissolution action where an assignment of property is part of the claim for relief.
Similarly, worker's compensation, specific indemnity awards, must also be treated as part of the marital estate subject to assignment pursuant to section 46b-81. Tyc v. Tyc,40 Conn. App. 562 (1996). It was therefore appropriate for the plaintiff to include these items on her financial affidavit and inappropriate for defendant not to include them on his. The court finds, however, that there was no intention on the part of the defendant to withhold this information from his wife or the court. The plaintiff wife has been and is fully apprised of all of the elements of defendant's estate.
The parties entered into marriage on May 18, 1974, in Meriden, Connecticut. Both were high school graduates. After high school, plaintiff received additional commercial education at a local business college for approximately one year before entering the work force. Plaintiff continued to work after marriage at first full-time, then part-time after the birth of her children. Plaintiff is presently working two jobs, one of which is a permanent position with the Wallingford school system as a cafeteria worker; in the other job, which is part-time, she is employed as a cashier at the K-Mart store. Plaintiff is 44 years of age, in good health, intelligent and economically capable. Because of her commercial education, it is reasonably probable she can become employed full-time at a somewhat increased pay scale.
Defendant husband has worked continuously before the marriage and during the marriage. He is a graduate of a state vocational high school with skills as a toolmaker although he has never worked in this field. Before the marriage he worked as an industrial maintenance person. After marriage he became employed CT Page 11637 as a full-time Wallingford firefighter. He worked steadily as a firefighter for 24.85 years until July 29, 1997, when he received a full disability pension for an employment related injury. He is presently receiving this pension against which is credited the specific weekly indemnity awarded him for one of his work related injuries. He has another relatively minor worker's compensation claim pending, which, if approved, will also be credited against his disability pension award. The defendant at the present time is being treated for hypertension. He has submitted a firefighter hypertension claim to his employer. If this claim is approved, it will provide the defendant with both beneficial tax consequences and certain employee benefits such as health insurance which he would not ordinarily receive as a retired nondisabled employee.
Defendant is 49 years of age, in questionable physical health. Throughout his married life, in addition to his firefighter's job, he has worked part-time delivering fuel oil in the winter time and operating a small lawn service and driveway maintenance business in season. The parties' adjusted gross income for 1995 was $58,760, approximately $54,000 of this sum came from defendant's efforts. The balance came from plaintiff's then part-time job as a cafeteria worker. With defendant's present physical disabilities, it does not appear reasonably likely he will continue to work at his part-time jobs. At the present time he is not performing either of these part-time jobs.
The parties have been married for 23 years and are the parents of two children, one of whom is a minor, born January 7, 1981. The minor, Jennifer Catucci, is presently attending high school and resides with the plaintiff. The parties' son works full-time and attends a community college. He also resides with his mother. The marriage was successful economically; money was not a problem. Defendant devoted all of his income to the family as did plaintiff. Plaintiff managed the family finances to the satisfaction of the defendant. Each party was and is a sober, industrious citizen devoted to family life and family values. There has been no physical abuse in the marriage or any abuse of alcohol, drugs or gambling by either party during the marriage.
From the beginning of the marriage, defendant was a motorcycle aficionado, but until the past few years, this hobby did not create any tension with the plaintiff. Of recent years, defendant devoted more and more time and in some instances money to motorcycle activities and less time to family activities to the annoyance of the plaintiff. This resulted in considerable CT Page 11638 dissatisfaction on the part of the plaintiff who interpreted the defendant's increasing interest in cycling and his continued interest in signing classes for the profoundly deaf as evidence of his interest in other women. The evidence permits the court to find that defendant did subsequently develop an interest in another woman, the teacher of the signing classes, and that as this interest matured, the defendant lost interest in maintaining his marriage to the plaintiff and left the family home on or about late September or early October of 1996. The parties have lived separately and apart since that date. Prior to leaving, the defendant refused the plaintiff's suggestion that both parties seek the services of a marriage counsellor. Defendant has maintained visitation with the minor child during his separation from the plaintiff.
The court concludes that the marriage has broken down irretrievably and should be and is therefore dissolved. Defendant is agreeable to the court ordering that the minor child, Jennifer, maintain her principal residence with her mother. The court so orders. Plaintiff desires sole legal custody of the child. Defendant prefers joint legal custody. The court concludes that joint legal custody of Jennifer is in the best interests of Jennifer. The court grants joint legal custody of Jennifer A. Catucci to the plaintiff and the defendant. Jennifer shall maintain her principal place of residence with her mother. The defendant shall have reasonable and liberal rights of visitation.
The parties acquired a considerable amount of assets and property during the course of their marriage. Although defendant was the principal producer of income during the marriage, the contributions of the plaintiff-wife in the acquisition, preservation and appreciation in value of the estate was not inconsiderable. The court has weighed all of the elements mandated by § 46b-81 (c) prior to entering any orders, assigning portions of this property to the plaintiff and the defendant. Because the defendant must accept the responsibility for the breakup of this marriage, the court has assigned the greater portion of these assets to the plaintiff.
Aside from the defendant's disability pension plan and his worker's compensation, specific indemnity claims, the parties acquired other significant other assets. The parties' jointly owned dwelling house has a value of approximately $155,000, less a mortgage of $6700. Vehicles, household furnishings and a boat have an overall value of approximately $25,000. Before the CT Page 11639 separation, the parties had liquid assets such as bank accounts, amounting to about $30,000; mutual funds, approximately $21,000; a REIT fund, $1600; cash surrender value of life policies, $5000; IRAs, $5500; and miscellaneous cash, about $7000. Prior to the freeze order, the plaintiff withdrew approximately $30,000 from joint funds accounts and placed these funds in her name: the defendant liquidated the jointly owned Phoenix Mutual fund of $21,000 and took possession of this sum together with miscellaneous cash of approximately $7000. Although the plaintiff's latest financial affidavit fails to note that she expects to receive a share of one-twelfth interest in an estate of her uncle, valued at $367,846.66, the inventory of the uncle's estate filed April 21, 1997, and the will accompanying this inventory were submitted into evidence by the defendant who questioned the plaintiff about this inheritance at the hearing. Plaintiff argues that this asset should not be considered a marital asset generated as a result of or during the course of the marriage.
Although the court concludes that the inheritance is not subject to assignment as a marital asset, it is a factor which the court cannot ignore with reference to its consideration of any child support or periodic obligations of the defendant. Before considering such obligations, the court will make the following assignments of property pursuant to § 46b-81: The court assigns to the plaintiff:
1. The defendant's entire right, title and interest in and to the family dwelling at 22 Jonathan Road, Wallingford, Connecticut, together with all furniture, appliances and household goods contained therein, excluding only those specific items hereinafter assigned to the defendant. The defendant shall immediately execute a quitclaim deed transferring his interest in this property to plaintiff. Plaintiff shall indemnify and hold harmless the defendant on the obligation of the existing mortgage.
2. The entire interest and title in and to the 1993 Thunderbird automobile presently in plaintiff's possession, subject to an existing lien for the remainder of the purchase price, which plaintiff assumes and agrees to pay holding defendant harmless on this obligation.
3. The Dime Savings account and the First Union account, the Credit Union account, the cash surrender value of plaintiff's CT Page 11640 Metropolitan Life policy, the plaintiff's IRA, all of which are shown on her current affidavit.
4. These items are estimated by the court to have a net value of approximately $190,000.
As noted earlier in this memorandum, the court is required to treat defendant's disability pension and worker's compensation specific indemnity award as assets of his estate pursuant to § 46b-81. Weighing all the factors required by § 46b-81c to be considered by the court in assigning such property, the court assigns to the plaintiff 15 percent of defendant's weekly disability pension or $116 weekly. Defendant is ordered to prepare a Qualified Domestic Relations Order (QDRO) for submission to the Wallingford Pension Authority, effectuating the transfer of this property to plaintiff. Until such time as this assignment is received and approved by the authorities, the defendant is ordered to pay the sum of $116 weekly directly to the plaintiff effective immediately.
The court assigns to the defendant all right, title and interest in and to the following items free and clear of any claim of the plaintiff:
1) a 1987 Ford pickup truck;
2) a 1993 Harley Davidson motorcycle;
3) a 1987 Starcraft boat;
4) all personal items, papers and clothing of the defendant remaining in the family home;
5) defendant's gunsafes, curio cabinet, record player and dry sink presently in the family home;
6) all cash shown on defendant's financial affidavit, dated 10/1/97, including his IRA, the cash surrender value of his whole life insurance policy and the value of the Wells retirement (REIT).
The court estimates the value of these items to be approximately $40,000.
The plaintiff's current net income of $301 will increase to CT Page 11641 $417 upon receipt of the income from the 15 percent assignment of defendant's disability pension. The assignment will reduce defendant's weekly income from his pension to $647 weekly. A total net income of $1,064 creates a total obligation for child support of $238. Defendant's share of this obligation is 61 percent or $145 weekly, less his share of the child's health premium for a net obligation of $140.
After weighing those considerations found in § 46b-84
(c), the court orders the defendant to pay to the plaintiff for the maintenance of Jennifer A. Catucci, born January 7, 1981, the sum of $140 weekly, commencing immediately, and to continue until Jennifer reaches the age of eighteen years or until Jennifer completes the 12th grade or obtains the age of nineteen years, whichever first occurs.
The court orders the defendant to maintain medical and dental insurance for the minor child and maintain a life insurance policy in effect through his former place of employment, the town of Wallingford, Connecticut, for the benefit of the minor child, Jennifer, until his obligation to pay child support terminates. Plaintiff and defendant shall share equally and pay to the appropriate medical provider the cost of medical, optical, dental, orthodontic and psychological care necessary for the maintenance of the minor child in all instances where the cost of such care exceeds the applicable insurance coverage.
Plaintiff may claim Jennifer as a dependent for federal and state income tax purposes.
Plaintiff and defendant shall each be responsible for all debts shown on their respective financial affidavits.
Section 46b-82 permits the court to order a party to pay alimony to the other party in addition to or in lieu of an award pursuant to § 46b-81. One of the guidelines for use in determining whether alimony should be awarded and its duration and amount is the award the court may make pursuant to §46b-81. The court has already awarded over 80 percent of the parties' tangible assets to the plaintiff who is the innocent party to the breakup. In addition, the court awarded plaintiff 15 percent of the defendant's disability pension to the plaintiff, which while technically a property settlement, is for support purposes in actuality a form of periodic alimony. CT Page 11642
These property awards tip the scales against any immediate or substantial award to the plaintiff in the nature of periodic alimony. Nevertheless, the court finds a need for a form of short-term rehabilitative alimony. Accordingly, the court orders defendant to pay to the plaintiff the sum of $50 weekly for a period of sixty months commencing on the first week after defendant's support order for Jennifer terminates by reason of her achieving legal majority.
This order for periodic alimony is nonmodifiable both as to amount and duration.
Dorsey, J. Judge Trial Referee